**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RIGRODSKY & LONG, P.A., | Case No.: |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| ABRAHAM, FRUCHTER & TWERSKY, LLP, and MITCHELL M.Z. TWERSKY, | **COMPLAINT** |
| Defendants. | |

Plaintiff, Rigrodsky & Long, P.A. ("R&L" or "Plaintiff"), brings this action for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment against Abraham, Fruchter & Twersky, LLP ("AF&T") and Mitchell M.Z. Twersky ("Twersky") (AF&T and Twersky are collectively referred to herein as "Defendants"), and alleges as follows:

**NATURE OF ACTION**

1. This action arises from Defendants' failure, as Lead Counsel in the action entitled *In re Fuqi International, Inc. Securities Litigation,* 10 Civ. 2515 (DAB) (S.D.N.Y.) ("*Fuqi*"), to allocate work in accordance with the terms of the agreement between Defendants and R&L. *See* Exhibit A (May 18, 2010 email from Mitchell Twersky) (the "Agreement") (copy annexed hereto). The Agreement provides for the "*equal*" allocation of work between AF&T and the other plaintiffs' counsel, including R&L. *Id.* Instead, Defendants, without notice to the other plaintiffs' counsel, allocated a far greater portion of the work (primarily review of Chinese language documents) to AF&T causing AF&T's lodestar to be exponentially higher than that of the other plaintiffs' counsel, including R&L. Indeed, two AF&T Associates expended *$1,094,248.75* in time reviewing documents, an amount far exceeding the total lodestar amounts

for each of the other plaintiffs' counsel in *Fuqi*. As a direct consequence, AF&T now asserts that it is entitled to a correspondingly higher share of the attorneys' fees awarded by the Court in *Fuqi* than the other plaintiffs' counsel, including R&L.

2. At all relevant times, R&L complied with its obligations under the Agreement with AF&T, including the payment of $65,000.00 to a litigation fund that was created to pay the expenses jointly incurred in connection with the prosecution of *Fuqi*. Moreover, R&L was capable and willing to perform any additional work assigned to it by AF&T. If necessary, for example, R&L could have retained Chinese language proficient contract attorneys to assist in the review of Chinese language documents. Instead, AF&T never indicated that it was expending a disproportionately large number of hours to conduct such review, nor made any attempt to allocate the review of Chinese language documents amongst the other plaintiffs' counsel, including R&L, in a manner to ensure that work in *Fuqi* was allocated equally.

3. Defendants' actions constitute a breach of the contract between AF&T and the other plaintiffs' counsel, including R&L. In addition, AF&T's actions constitute a breach of the implied duty of good faith and fair dealing implied in every contract under New York law. AF&T's refusal to disburse the attorneys' fees awarded by the *Fuqi* Court equally amongst the plaintiffs' counsel also constitutes unjust enrichment, inasmuch as the Agreement clearly provides for the equal allocation of work and, consequently, the equal division of any attorneys' fees amongst plaintiffs' counsel in *Fuqi*.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 USC § 1332. R&L is a Delaware professional association and AF&T is a New York limited liability partnership. No

R&L shareholders are citizens of the State of New York; no AF&T partners are citizens of the State of Delaware; and the amount in controversy exceeds $75,000.00.

5. Venue is proper in this Judicial District pursuant to 28 USC § 1391(b). Many of the acts and transactions alleged herein, including the negotiation of the relevant agreement at issue, occurred in substantial part in this District.

## PARTIES

### Plaintiff

6. Plaintiff R&L is a professional organization organized under Delaware law with offices located in Wilmington, Delaware and Garden City, New York.

### Defendants

7. Defendant AF&T is a New York limited liability partnership registered to do business, and with offices located, in New York.

8. Defendant Mitchell M.Z. Twersky is a founding partner of AF&T who, upon information and belief, is a resident of the State of New York and the AF&T partner with primary decision-making authority in connection with *Fuqi*.

## SUBSTANTIVE ALLEGATIONS

9. Class action complaints were filed against Fuqi International, Inc. ("Fuqi" or the "Company") and others in March 2010, after Fuqi announced that it would be restating its financial statements for the first three quarters of 2009. On March 24, 2010, R&L filed a complaint on behalf of plaintiff Tamy Dee Thompson against the Company, certain of its officers and directors, and the underwriters in Fuqi's July 2009 secondary offering (the "Secondary Offering"), alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934.

10. Prior to the deadline for filing motions to be appointed as lead plaintiff under the Private Securities Litigation and Reform Act of 1995, as amended (the "PSLRA"), R&L was retained by Sandra Redfern ("Redfern").

11. In or about May 2010, while preparing a motion for Redfern to be appointed as lead plaintiff under the PSLRA, R&L was contacted by Michael Goldberg of Glancy Binkow & Goldberg, LLP to discuss the possibility of the firms' clients working together to prosecute the class claims.[1] Following consultation, Redfern agreed to jointly prosecute the class claims with GPM's clients Craig B. Laub ("Laub") and J. D. Pisut ("Pisut").

12. Shortly thereafter, R&L was again contacted by Michael Goldberg to discuss the possibility of jointly prosecuting the class claims with AF&T's client, the Puerto Rico Government Employees & Judiciary Retirement Systems Administration ("PRGERS"). Once again, following consultation, Redfern agreed to do so.

13. Although R&L's client, Redfern, and GPM's clients, Laub and Pisut, had larger losses than AF&T's client, PRGERS, it was agreed that AF&T would seek appointment as Lead Counsel because its client required such appointment as a condition for participation in the litigation.[2] In exchange for AF&T seeking appointment as sole lead counsel, however, R&L and GPM required assurances from AF&T that the litigation would be prosecuted on an equal basis.

---

[1] Glancy Binkow & Goldberg, LLP is the predecessor law firm to Glancy, Prongay & Murray, LLP. For ease of reference, Glancy Binkow & Goldberg, LLP and Glancy, Prongay & Murray, LLP are referred to herein as "GPM."

[2] AF&T's client, PRGERS, sustained a class period loss of approximately $125,819.30. R&L's client, Redfern sustained a class period loss of approximately $327,221.58, and GPM's clients, Laub and Pisut, sustained aggregate losses of approximately $400,000.00. The size of the loss is significant under the PSLRA because that statute provides that the "most adequate plaintiff" to serve as lead plaintiff is, among other things, the plaintiff or movant that has "in the determination of the court, has the largest financial interest in the relief sought by the class . . . ." *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) (bb); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

14. Defendant Twersky, on behalf of AF&T therefore agreed that if AF&T was appointed as lead counsel, it would "allocate the work in this case *equally* between itself, Glancy Binkow and Goldberg LLP and Rigrodsky & Long P.A. and will seek the same multiple if any for the work performed by each of these firms in this action." *See* Ex. A (emphasis added). The "PR Group," which included Redfern, Laub, Pisut and PRGERS (collectively, "Lead Plaintiff"), were appointed as Lead Plaintiff on July 26, 2010, and AF&T was appointed as Lead Counsel.

15. Pursuant to the Agreement, all counsel thereafter participated in extensive prosecution of the class claims which, among other things, included retaining investigators to identify and interview of potential witnesses (former employees and customers of the Company); the preparation of an initial complaint, a Consolidated Complaint and a First Amended Complaint; consultation with experts; the review of documents produced by the Company and interviews of an Audit Committee member and one of the Company's outside counsel; preparation of a mediation statement and participation in a mediation. AF&T never directed other *Fuqi* plaintiffs' counsel to report the time they had expended in connection with the prosecution of that litigation.

16. The initial mediation was scheduled for late 2011. At that time, AF&T indicated that R&L should not attend the mediation session due to work allocation issues: "[i]t was believed that because you [R&L] participated in the interviews [of *Fuqi* defendant Eileen Brody and Fuqi outside counsel Ed Fishman] that Glancy should attend the mediation so as not to have overkill at either of the events." *See* Exhibit B, Sept. 13, 2011 email from Lawrence D. Levit (copy annexed hereto). That mediation never occurred because Fuqi's counsel withdrew from the litigation.

17. After Fuqi retained new counsel, efforts to mediate the litigation were renewed and a mediation session was scheduled for December 2013. Once again, AF&T advised R&L not to attend that mediation. *See* Exhibit C, Nov. 11, 2013 email from Lawrence D. Levit (copy annexed hereto) ("As we had planned last time, it probably is best not to have all counsel attend. Glancy will likely want to be there because it is nearby."). AF&T, however, represented that "[t]he fact you will not be attending the mediation in this case will not be held against you." *See* Exhibit D, Nov. 27, 2013 email from Lawrence D. Levit (copy annexed hereto).

18. A mediation session was conducted before the Hon. Layn R. Phillips (U.S.D.J., Ret.) on December 12, 2013. During the mediation the Company agreed to settle *Fuqi* by creating a $7.5 million cash settlement fund for the benefit of the class (the "Settlement").

19. On January 16, 2015, Lead Plaintiffs moved for approval of the Settlement, and AF&T moved for the award of attorney's fees of one third of the Settlement fund, or $2.5 million, on behalf of itself, R&L and GPM, as well as the reimbursement of reasonable expenses of $252,602.58 in connection with the prosecution of that action. As part of that motion for the award of attorneys' fees, declarations reporting the time and expenses expended by the counsel for plaintiffs in *Fuqi* were submitted to the court.

20. With respect to the preparation of the declarations regarding plaintiffs' counsel's time and expenses, AF&T advised R&L and GPM that: "[w]e likely will have a significant negative lodestar here. As indicated in para 5 of the Declaration that I just circulated, we will be cutting our lodestar to make it more reasonable. Your firms should probably do the same." *See* Exhibit E, Jan. 14, 2015 email from Lawrence D. Levit.[3]

---

[3] The draft declaration circulated by AF&T did not contain actual time entries for that firm.

21.     R&L cut its time "significantly" in accordance with AF&T's instruction. *See* Exhibit F, Jan. 14, 2015 email from Timothy J. MacFall. R&L also provided AF&T with a draft of its declaration reporting time and expenses. In response, AF&T further advised R&L that it should "delete anyone who has only 20 hours or less." *Id.*, Jan. 14, 2015 email from Lawrence D. Levit. Notably, AF&T advised R&L to reduce the time reported despite the fact that AF&T knew, while R&L did not, that AF&T's reported time for Associate document review far exceeded R&L's reported time.

22.     R&L ultimately reported that it had expended 958 hours, with a lodestar of $607,520.50, in connection with the prosecution of *Fuqi*. *See* Exhibit G, Amended Declaration of Timothy J. MacFall, dated August 31, 2015, ¶ 7 (copy annexed hereto).[4] GPM reported that it had expended 1,896.9 hours, with a lodestar of $830,117.00, in connection with the prosecution of *Fuqi*. *See* Exhibit H, Amended Declaration of Ex Kano S. Sams II, dated August 31, 2015, ¶ 7 (copy annexed hereto). Despite the fact that the Agreement provided for the equal allocation of work, AF&T reported that it had expended ***3,724.25*** hours, with a lodestar of ***$1,719,061.25*** in connection with the prosecution of *Fuqi*. *See* Exhibit I, Amended Declaration of Mitchell M.Z. Twersky, dated August 31, 2015, ¶ 7 (copy annexed hereto). One AF&T Associate, Xiang Li, expended ***2,086.25*** hours, or ***$824,068.75*** worth of time, on the litigation. *Id*. Another AF&T Associate, Wei Chen, expended ***684*** hours, representing a lodestar of ***$270,180.00***, on *Fuqi*.[5] *Id*.

23.     Despite the thousands of hours AF&T expended reviewing Chinese language documents, only two of the fifty-seven (57) exhibits, or "hot" documents, submitted in support of

---

[4] Although initially filed in January 2015, amended papers in support of the motion for the award of attorneys' fees were filed in August 2015 at the direction of the *Fuqi* Court. The lodestar totals for AF&T, R&L and GPM were the same in both submissions.

[5] R&L has been informed by AF&T that the primary responsibility of these AF&T Associates was the review of Chinese language documents.

7

Lead Plaintiffs' December 12, 2013 mediation statement were translated Chinese language documents.[6] The other exhibits were in English.[7]

24.  The Settlement was approved by *Fuqi* Court on February 18, 2016. That court awarded attorneys' fees of 33% of the Settlement fund, as well as reimbursement of all expenses.[8] In or about the end of April 2016, the court-appointed claims administrator, Angeion Group, paid $2,475,000.00, representing 33% of the Settlement fund, to Lead Counsel pursuant to the *Fuqi* court's order awarding attorneys' fees. The attorneys' fees awarded by the *Fuqi* Court represented a multiplier of approximately .79 of the aggregate lodestar of the counsel for the *Fuqi* plaintiffs.

25.  Following the Claims Administrator's payment of the undisputed amount of the attorneys' fees from the *Fuqi* settlement fund in April 2016, AF&T informed R&L and GPM for the first time that AF&T, as Lead Counsel, would pay them their lodestar with a .79 multiplier, despite the fact that the allocation of work – for which AF&T was responsible as Lead Counsel – was not equal as required by the Agreement.

26.  At all relevant times, R&L complied with its obligations under the Agreement, including the payment of $65,000.00 to the litigation fund that was created to pay the expenses jointly incurred in connection with the prosecution of *Fuqi*. See Exhibit G (Ex. B thereto at 3).

---

[6] Fifty-eight (58) documents were actually submitted in support of Lead Plaintiffs' Mediation Statement, however, one document was a copy of the operative complaint in *Fuqi*.

[7] *Fuqi,* a federal securities class action, involved allegations of accounting improprieties and the failure to comply with generally accepted accounting principles. *Fuqi* defendants Eileen B. Brody and Victor A. Hollander, who were Company directors and members of the Audit Committee of the Board of Directors during the relevant period, are Americans and, therefore, the overwhelming majority of "hot" documents were in English.

[8] There is some ambiguity concerning the additional 1/3 percent, or $25,000. The *Fuqi* Court awarded 33%, but indicated that it was granting the request for the award of attorneys' fees requested, which was 33 and 1/3%. AF&T has indicated that it is seeking, or will seek clarification from the *Fuqi* Court concerning the additional $25,000.

As necessary, R&L retained contract attorneys to assist in its review of documents. *Id*. Moreover, R&L was capable of, and willing to, perform any additional work assigned to it by AF&T, including the retention of Chinese language proficient contract attorneys to review Chinese language documents. Had AF&T abided by the unambiguous terms of the Agreement and allocated work equally among the counsel for the *Fuqi* plaintiffs, R&L would have performed any additional work necessary to maintain lodestar parity with AF&T.

27. AF&T has now informed R&L that it will pay R&L its lodestar with a .79 multiplier, or $479,941.20. The Agreement, however, clearly contemplated an equal division of any attorneys' fees awarded in *Fuqi*, or $825,000.00, amongst all plaintiffs' counsel as is shown by the language providing for an equal allocation of work by AF&T, as Lead Counsel, and payment of the same lodestar multiplier to all plaintiffs' counsel. R&L has, therefore, been damaged by the Defendants' misconduct as specified herein.

## FIRST CAUSE OF ACTION
**(Breach of Contract Against All Defendants)**

28. Plaintiff realleges each and every allegation contained above as if fully set forth herein.

29. This claim is brought against Defendants for their breach of the Agreement.

30. The Agreement is a binding contract between Defendants and R&L.

31. Plaintiff fulfilled its obligations under the Agreement. R&L attorneys performed extensive work on *Fuqi*; complied with instructions from AF&T, as Lead Counsel in *Fuqi*; and contributed $65,000.00 to the litigation fund created to pay joint expenses incurred in connection with the prosecution of *Fuqi*.

32. Defendants breached their obligations under the Agreement by failing to allocate work in *Fuqi* "equally" amongst AF&T, R&L and GPM, thereby, securing a disproportionate share of the attorneys' fees awarded by the *Fuqi* Court for AF&T.

33. Plaintiff was damaged as a result of Defendants' misconduct in an amount to be determined at trial, but in excess of $345,000.00.

## SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

34. Plaintiff realleges each and every allegation contained above as if fully set forth herein.

35. This claim is brought against Defendants for their breach of the Agreement.

36. The Agreement is a binding contract between Defendants and Plaintiff.

37. Plaintiff fulfilled its obligations under the Agreement. R&L attorneys performed extensive work on *Fuqi*; complied with instructions from AF&T, as Lead Counsel in *Fuqi*; and contributed $65,000.00 to the litigation fund created to pay joint expenses incurred in connection with the prosecution of *Fuqi*.

38. Under New York law, all contracts imply a covenant of good faith and fair dealing in the course of performance. The implied covenant is breached when a party to the contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement.

39. As described above, the Agreement provides for the "equal" allocation of work amongst plaintiffs' counsel, including AF&T and R&L. The Agreement further provides that all plaintiffs' counsel will receive the same lodestar multiplier in any fee allocation. Therefore, the

10

clear intent of the parties to the Agreement is that any attorneys' fees awarded by the *Fuqi* Court would be equally divided.

40. AF&T, however, has now stated that it will allocate to itself a larger share of the attorneys' fees based upon the *Fuqi* plaintiffs' counsels' respective lodestars, thereby depriving R&L of its right to receive the benefits for which it had bargained under the Agreement. The significant disparity in the lodestars for AF&T and R&L is the direct result of AF&T's failure, as Lead Counsel, to ensure that there was an "equal" allocation of work amongst plaintiffs' counsel in *Fuqi* as required by the Agreement. As alleged above, more than $1,000,000.00 of AF&T's lodestar is attributable to the review of Chinese language documents. Prior to the filing of the motion for the award of attorneys' fees, AF&T knew – while R&L did not – that two AF&T Associates were expending an enormous amount of time reviewing these documents (which would ultimately total to more than 2,700 hours). This inequitable allocation of work, of which R&L was unaware, damaged R&L by depriving it of the opportunity to maintain lodestar parity with AF&T.

41. In addition, AF&T took other actions that caused the significant disparity in the lodestars for AF&T and R&L. As alleged above, AF&T instructed R&L not to attend the mediation session in *Fuqi*, and R&L abided by that instruction. By the time of the December 12, 2013 mediation session, the review of documents was complete and, therefore, AFT&T knew, but R&L did not, that AF&T had allocated to itself a disproportionately greater share of the work primarily due to AF&T's review of Chinses language documents. Despite AF&T's representation that "[t]he fact you will not be attending the mediation in this case will not be held against you" (Exhibit D), R&L's lodestar would have been higher and, therefore, it would have been entitled to additional attorneys' fees had it attended the mediation.

11

42. As described above, AF&T also instructed R&L and GPM to reduce their lodestars to make them more "reasonable." *See* Exhibit E. Even after receiving a draft of R&L's declaration reporting its time and expenses in *Fuqi*, AF&T further advised R&L to eliminate time for anyone with less than 20 hours of work. *See* Exhibit F. At the time that AF&T so instructed R&L – one day before the filing of AF&T's declaration with the *Fuqi* Court – Defendants were aware that AF&T's lodestar was exponentially higher than R&L's lodestar due, primarily, to the time attributable to AF&T's review of Chinese language documents.

43. Defendants, therefore, breached the implied covenant of good faith and fair dealing by seeking a greater share of the attorneys' fees awarded in *Fuqi* than the other plaintiffs' counsel, including R&L, based upon a lodestar disparity that was the direct result of AF&T's failure to allocate work equally amongst *Fuqi* plaintiffs' counsel as required by the Agreement. Further, by: (i) instructing R&L not to attend the *Fuqi* mediation; (ii) instructing plaintiffs' counsel, including R&L, to reduce their lodestars; and (iii) instructing R&L to omit time for anyone who worked less than twenty (20) hours on *Fuqi*, AF&T further breached the implied covenant of good faith and fair dealing in the Agreement by taking actions to exacerbate the disparity between the lodestars of AF&T and other *Fuqi* plaintiffs' counsel, including R&L to secure a greater share of the attorneys' fees awarded in *Fuqi*.

44. Defendants have injured the right of Plaintiff to receive the fruits of its contract and improperly denied R&L its appropriate share of the attorneys' fees awarded by the *Fuqi* Court, the amount of such damages to be determined at trial, but in excess of $345,000.00.

## THIRD CAUSE OF ACTION
**(Unjust Enrichment Against Defendant AF&T)**

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. This is a claim against AF&T for unjust enrichment. As a result of AF&T's conduct, it has been enriched at R&L's expense.

47. AF&T has been directly enriched as a result of its withholding of the full share of attorneys' fees arising from the Settlement, to which R&L is entitled under the terms of the Agreement.

48. The circumstances are such that it would be against equity and good conscience to permit AF&T to retain its ill-gotten gains from R&L. AF&T had an obligation to equally allocate work in Fuqi and compensate the *Fuqi* plaintiffs' counsel, including R&L, on that basis.

49. AF&T failed to allocate work equally to all *Fuqi* plaintiffs' counsel, including R&L, and has stated that it will retain a part of the attorneys' fees due to R&L.

50. Plaintiff was damaged as a result of Defendants' misconduct in an amount to be determined at trial, but in excess of $345,000.00.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a jury trial and judgment as follows:

A. Damages in an amount to be determined at trial, but in excess of $345,000.00;

B. Reasonable attorneys' fees and nontaxable costs to the extent allowed by law;

C. Pre-judgment interest at the highest rate permitted by law; and

D. Such other and further relief as the Court deems just and proper.

Dated: May 5, 2016  **RIGRODSKY & LONG, P.A**
By: *Seth D. Rigrodsky*
Seth D. Rigrodsky
Timothy J. MacFall
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Facsimile: (302) 654-7530
sdr@rigrodskylong.com
tjm@rigrodskylong.com

*Attorneys for Plaintiff*